**AMERIND SHIPPING CORPORATION,**
**Plaintiff,**

**v.**

**The JORDAN INTERNATIONAL CO.,**
**Defendant.**

**Civ. A. No. 69–1206.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

April 27, 1970.

---

2. See note 18 and accompanying text of the three-judge opinion.

Walter Carroll, Jr., New Orleans, La., for plaintiff.

Chas. King Mallory, New Orleans, La., for defendant.

RUBIN, District Judge:

Amerind Shipping Corporation (Amerind) acts as agent for various interstate and foreign ocean carriers, including Federal Commerce & Navigation Company (Federal), an ocean carrier. Federal handled a shipment of steel and steel products for Jordan International Company (Jordan), an importer, through the Port of New Orleans. The cargo was brought in by ocean carriers and loaded directly from the carriers to barges. The Port's tariff imposes a charge against cargo, which it calls "wharfage." The charge is based on the number of tons received or discharged by vessels berthed at its wharves, including cargo passing between vessels. The Port's charge for the three shipments involved was $9,360.87. Amerind paid the wharfage and claims it is due reimbursement by Jordan. Jordan moves to dismiss the complaint, or, alternatively, for summary judgment on several grounds.

## I. THE CLAIM THAT THE TRUE DEBTOR IS FEDERAL

█ Jordan says the charge is against the vessel, not cargo, therefore it is Federal, the vessel owner, who owes the wharfage charge and who owes reimbursement to Amerind. But the facts are not yet sufficiently clear to determine whether or not this is so. Indeed, it may be that Federal is not Amerind's debtor but Jordan's true creditor, on the basis that Amerind paid wharfage for its principal's account and that Jordan owes Federal for this.

Amerind contends it has a claim against Jordan either as the subrogee of the Dock Board, or under the doctrine of negotiorum gestio. The contract of carriage is not in evidence; the court has only the bare bones pleadings with a copy of the Port tariff attached. There are neither depositions nor affidavits setting forth facts that would enable decision whether Jordan or Federal owed the wharfage charge. Until this is clarified, it cannot be determined that Amerind's claim against Jordan lacks all possibility of merit.

Hence the motion on this ground is denied, without prejudice.

## II. THE CLAIM THAT THIS IS NOT AN ADMIRALTY OR MARITIME MATTER

█ There is diversity of citizenship in this action, but the claim is for less than $10,000. Therefore, unless the matter is "a case of admiralty jurisdiction," the court lacks competence to hear it.

In De Lovio v. Boit, C.C.D.Mass.1815, 7 Fed.Cas. p. 418, No. 3,776, Justice Story formulated the classic test of admiralty jurisdiction. It "comprehends all maritime contracts, torts, and injuries. * * * [It] extends over all contracts, (wheresoever they may be made or executed, or whatsoever may be the form of the stipulations,) which relate to the navigation, business or commerce of the sea." 7 Fed.Cas. at 444.

Here it will be necessary to interpret the contract of carriage to determine who is liable for the wharfage. The Port tariff speaks of wharfage as being due by the owners of the cargo and says its collection and payment must be guaranteed by the vessel. But the tariff alone is not decisive of ultimate liability for its charges. The contract of carriage must be read in context with the tariff to determine whether the ultimate burden rests on owner or carrier.

In essence, the claim here lies either in subrogation or in quasi-contract. Amerind contends it paid something that Jordan owed, and it should get its money back. Jordan says the charge was levied for services against the cargo and the question of ultimate liability for it should be left to the landlocked judges of the civil district court.

█ If there is an equitable basis for the subrogation claim, it is cognizable in

admiralty. For, in Judge Brown's nautical metaphor, from Compania Anonima Venezolana De Nav. v. A. J. Perez Exp. Co., 5 Cir. 1962, 303 F.2d 692, 699:

> "The Chancellor is no longer fixed to the woolsack. He may stride the quarter-deck of maritime jurisprudence and, in the role of admiralty judge, dispense, as would his land-locked brother, that which equity and good conscience impels."

With respect to the suggested basis in quasi-contract, this case appears indistinguishable in principle from Archawski v. Hanioti, 1956, 350 U.S. 532, 76 S.Ct. 617, 100 L.Ed. 676. The question whether Jordan had a duty to pay the wharfage is "referable * * * to the breach of a maritime contract." 350 U.S. at 534–535, 76 S.Ct. at 620. Therefore, with respect to Amerind's claim to restitution from Jordan, "It is sufficient * * * to hold that admiralty has jurisdiction, even where the libel reads like *indebitatus assumpsit* at common law, provided that the unjust enrichment arose as a result of the breach of a maritime contract. Such is the case here." 350 U.S. at 536, 76 S.Ct. at 621.

The jurisdiction of admiralty courts should not be restricted "to the narrow concept delineated in [Jordan's] argument." Tropicana Shipping, S.A. v. Empresa Nacional "Elcano", 5 Cir. 1966, 366 F.2d 729, 732. "It would be strange indeed thus to hobble a legal system that has been so responsive to the practicalities of maritime commerce and so inventive in adapting its jurisdiction to the needs of that commerce." Swift & Co. Packers v. Compania Colombiana Del Caribe, 1950, 339 U.S. 684, 691, 70 S.Ct. 861, 866, 94 L.Ed. 1206.

### III. THE CHARGE THAT, BECAUSE THE COMPLAINT FAILS TO JOIN THE PORT AND FEDERAL, COMPLETE RELIEF CANNOT BE AFFORDED

There is no reason whatever to join the Port; no one claims it collected the wharfage improperly or owes it back. It may be that Federal does owe Amerind or that, if Jordan is compelled to pay, Amerind is entitled to indemnity. In either case, the proper procedure is for Amerind to join Federal under Rule 14(c), Federal Rules of Civil Procedure.

For these reasons, the motions to dismiss and for summary judgment are denied.